## THE DELAWARE.[1]

### WINNETT et al. v. THE DELAWARE.

(District Court, E. D. New York. May 7, 1894.)

COLLISION—STEAM VESSELS CROSSING.

A tug having a steamship approaching on her port hand, in a situation justifying the supposition that the steamship will go under her stern, or stop, is not in fault for keeping up her speed.

[1] Reported by E. G. Benedict, Esq., of the New York bar.

·This was a libel by Charles H. Winnett and others against the steamship Delaware for the loss of libelants' tug Talisman by collision with the steamship.

Wing, Shoudy & Putnam, for libelants.
Convers & Kirlin, for claimants.

BENEDICT, District Judge.    This is an action brought by the owners of the tug Talisman to recover for the loss of that tug, which was sunk at about 10 o'clock on the morning of September 16, 1893, by the steamer Delaware, in Gedney's channel.    The steamship was inward bound.    The tug was towing the pilot boat Edmund Driggs to her station, and was crossing Gedney's channel, towards the line of the black buoys.    The Talisman was struck on her port side by the Delaware.    The fireman on the tug was killed while attempting to cast off the towing line, the captain's arm was broken, and several of the crew were thrown overboard.

The fault of the Delaware is clearly proved.    The only question remaining for consideration is whether there was a fault on the part of the tug.    The faults charged against the tug are—First, in omitting to stop and reverse when risk of collision was evident; second, that the engineer of the tug left his post at a critical moment, when he ought to have executed an order which might have avoided the collision.    I find neither of these charges sustained.    The tug had an undoubted right to cross Gedney's channel as she did.    It was the duty of the steamship to avoid her, and it was equally the duty of the tug to keep up her speed.    In my opinion, it would have been a fault on the part of the tug to have stopped, under the circumstances. The vessels were on crossing courses, and in Gedney's channel. When the Delaware approached near to the tug, the tug had reached the western side of the channel.    The situation justified the pilot of the tug in supposing that the steamship would go under his stern, or stop, and repelled any supposition that the steamship would pass ahead of him, and over to the western side of the channel.    If he had acted on such a supposition, and stopped, he would have been at fault.    I also find that the collision was in no way attributable to the fact that the engineer of the tug left the engine, and ran, at the last moment, to save his life.

There must be a decree for the libelants, with an order of reference to ascertain the damages.